**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FENTON BURNS, | : |
| Petitioner, | : |
| v. | : |
| HOMELAND SECURITY, et al., | : |
| Respondents. | : |

Civil No. 04-6357 (GEB)

**OPINION**

RECEIVED

AUG 1 9 2005

AT 8:30 _____ .:
WILLIAM T. WALSH
CLERK

**APPEARANCES**:

    FENTON BURNS
    Monmouth County Correctional Institution
    1 Waterworks Road
    Freehold, New Jersey  07728
    Petitioner Pro Se

    ANTHONY J. LaBRUNA, JR., ASSISTANT U.S. ATTORNEY
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    970 Broad Street
    Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**BROWN, JR.**, District Judge

    Petitioner Fenton Burns filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. §

2241 on December 22, 2004, challenging his detention by the Department of Homeland Security

("DHS").[1]  Petitioner asserted that he was being held in custody in violation of Zadvydas v.

---

    [1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security.  6 U.S.C. § 271(a).  The Act transferred the functions of
(continued...)

Davis, 533 U.S. 678 (2001), because his deportation was not reasonably foreseeable and the government's contention that he failed to assist in his removal was "unsubstantiated and insufficient." (Pet. at 3.) The Court ordered the government to file and serve an answer and certified copies of all documents relating to Petitioner's claim. On July 11, 2005, the government filed a Brief in Response to Petition for Writ of Habeas Corpus, accompanied by uncertified copies of various documents. The government argued that the Petition should be denied pursuant to 8 U.S.C. § 1231(a)(1)(C) because Petitioner "has not done everything possible to assist in the securing of travel documents, and has stalled the process pending the processing of his wife's application for adjustment of status." (Brief in Response to Petition at 1.) Having thoroughly examined the papers and considered the arguments of the parties, this Court finds that there is a dispute of material fact whether Petitioner has failed to comply with § 1231(a)(1)(C) or whether he has complied but Belize has nonetheless refused to issue the necessary documents.

## I. BACKGROUND

Petitioner Fenton Burns challenges his detention on the grounds that his removal from the United States is not statutorily authorized and deprives him of a liberty interest in violation of the Fifth Amendment of the United States Constitution. See Zadvydas, 533 U.S. at 700-701. Respondent counters that because Petitioner has not sufficiently cooperated in the process of securing the necessary travel documents from Belize, he is not entitled to release.

Petitioner asserts the following facts. He alleges that he is a native and citizen of Belize. He states that he entered the United States on August 26, 1988, and has remained here in an

---

[1](...continued)
the Commissioner of INS to the Director of BCIS, 6 U.S.C. § 271(b), and abolished INS, 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

unlawful status.  He asserts that he married a United States citizen nine years ago and he has a

10-year old son and seven-year old daughter, both of whom are U.S. citizens.  Petitioner asserts

that the government initiated removal proceedings in January 2000 and released him on bond.

He alleges that he received a final order of removal on June 6, 2003, and he was taken into

custody on January 15, 2004, after receiving a notice directing him to appear at 26 Federal Plaza

in New York City.

      Petitioner alleges that government officials reviewed his post-removal period detention

and improperly denied release on August 31, 2004, on the ground that he did not assist

immigration officials to obtain a travel document.  He challenges his detention as follows:

> The petitioner contends that he has assisted the BICE as best he
> can while being in custody to attain a travel document from the
> government of Belize.  That he will prior to submitting this
> petition, again petition the Belize consulate regarding this matter.
> However, the petitioner contends that at this time this may be futile
> because he does not ha[ve] sufficient documentation to present to
> the government of Belize to establish his nationality.
>
> The petitioner contends that the actions of the deportation officer
> denying him release predicated upon the assertion that the
> petitioner failed to assist the BICE in attaining a travel document is
> unsubstantiated and insufficient to provide for this indefinite
> detention and that he is being held in detention in violation of the
> post removal detention custody rules . . . .
>
> The petitioner contends that it is not due to any inhibitations [sic]
> by him that the BICE cannot effectuate his removal from the
> United States.  The petitioner cannot get to Belize to issue a travel
> document, which is essentially, what it would take to effectuate his
> physical removal from the United States.  The petitioner cannot do
> more being incarcerated to assist the BICE, yet this continues to be
> the sole basis for which his detention continues.

(Pet. at 2-3.)

By letter dated May 14, 2005, Petitioner informed the Court that on May 2, 2005, his wife filed an I-130 immediate relative petition on his behalf. Relying on Zadvydas, Petitioner argues that his continued detention is not authorized by statute and violates due process.

The government filed a "Brief in Response to Petition for Writ of Habeas Corpus" with several exhibits attached to the Brief.[2] The government recites the following facts. Officials apprehended Petitioner near the Hidalgo Port of Entry after he waded the Rio Grande River and released him on bond. A Notice to Appear charges Petitioner with removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. On December 17, 2002, an Immigration Judge in New York City ordered Petitioner to be removed to Belize and denied his applications for asylum and withholding of removal. A written order of removal was entered on January 16, 2003. On August 28, 2003, the Board of Immigration Appeals affirmed the decision without opinion. Petitioner's bonding company was notified that the bond was breached because he failed to appear for deportation. According to Respondent, on January 15, 2004, Yvonne A. Smalls, Interim Field Office Director for Detention & Removal of the New York District Office of DHS, issued a warrant directing any officer of the United States Immigration and Customs Enforcement to take Petitioner into custody and remove him pursuant to a final order of removal based on § 212(a)(6)(A)(i) of the INA. Officials took Petitioner into custody on January 15, 2004, and he remains detained.

_____

[2] The government did not attach the documents to an affidavit or declaration.

4

Several uncertified documents are attached to the government's Brief. Form I-264 to the Embassy of Belize in Washington, D.C., is dated January 21, 2004. The form indicates that Petitioner claims to be a national of Belize, that he is being detained pending removal, and that no documentary proof of nationality is available, and identifies Petitioner's parents in Belize. A Consular Notification for Detained Foreign National addressed to the Embassy of Belize, is dated January 23, 2004. It states that DHS has detained Petitioner, whom the department understands to be a national of Belize, and provides Petitioner's name, date of birth, and town of birth. The form provides space for a passport number, date of passport issuance, and place of issuance, but these spaces are blank. A letter dated October 4, 2004, from the Deportation Officer asks the Embassy of Belize to expedite the issuance of a travel document for Petitioner.

A letter dated October 13, 2004, from Frantz Jeudy to Tammy Cyr, a U.S. official in Washington, DC, states that Petitioner has been detained by DHS since January 15, 2004, that his case was presented to the Embassy of Belize on March 31, 2004, requesting the issuance of a travel document, and that there is no proof of citizenship in A-file. Frantz Jeudy concludes that "[s]ubject is refusing to cooperate in assisting ICE in obtaining a travel document to effect his removal." (Letter dated Oct. 13, 2004, from Frantz Jeudy, attached to Brief of Respondent.).

The Post Order Custody Review Worksheet, signed on December 28, 2004, denies release. (Post Order Custody Review Worksheet at p. 4, Ex. D to Brief.) It states that the Embassy of Belize "requires evidentiary documentation to establish the detainee's citizenship." (Id.) The Custody Review indicates that Petitioner prevented his removal by failing to provide proof of citizenship and failing "to make an effort in good faith to obtain a travel document." (Id.)

The final attachment to the Brief is a letter from Petitioner to the Permanent Mission of Belize dated March 13, 2005. The letter states that Petitioner's name is Fenton Lionel Burns; that he was born in the district of Stann Creek; that his mother's name is Cherry Garbutt; that he is providing this information to clarify the fact that he is a native and citizen of Belize. (Letter dated March 13, 2005, Ex. G to Brief.) The letter further indicates that Petitioner's wife has filed an application for adjustment of status and provides:

> I am not insisting that you not issue a travel document, but I would greatly appreciate it if I could be provided the opportunity to see this through. I have two children who are both United States citizens and whom I would unconditionally be appreciate of the opportunity to raise. My son is ten years of age and my daughter is seven. I do not wish to deprive them of their father and it is very important that I do anything in my power to keep my family together.

(Id.)

The government argues that the failure of Belize to issue travel documents is caused by Petitioner's failure to cooperate. The government states the following in its Brief:

> With respect to Petitioner's claim that he has cooperated in the process of his removal, the Respondent challenges that claim. Petitioner has not been fully forthcoming with respect to his cooperation. His wife has his birth certificate which he has not insisted that she provide. While he did write to the Belize consulate he also stated that he is appealing his case and as such he telegraphed that he wished them not to cooperate in providing the travel documents. (see Exhibit G). These actions are contrary to the statute which requires that the Petitioner cooperate in the removal process in order to be considered for release. Specifically, section 241(a)(1)(C) of the Act, 8 U.S.C. § 1231(a)(1)(C) applies to this case . . .

(Brief at 6.)

6

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001).

B.  Statutory Authority for Post-Removal-Period Detention

The government has detained Petitioner for 19 months and does not argue that his removal is reasonably foreseeable.  What the parties dispute is the reason that his removal is not reasonably foreseeable.  Petitioner argues that his removal is not reasonably foreseeable because Belize will not issue travel documents without documentary evidence of citizenship and he does not possess documentary evidence of citizenship.  The government argues that removal is not reasonably foreseeable because Petitioner is preventing his removal.

Section 1231(a)(6) authorizes the post-removal-period detention of certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national

7

security or foreign relations reasons, as well as any alien "who has been determined by the

Attorney General to be a risk to the community or unlikely to comply with the order of removal."

See 8 U.S.C. § 1231(a)(6); Zadvydas, 533 U.S. at 688.  Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182
> of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or
> 1227(a)(4) of this title or who has been determined by the Attorney
> General to be a risk to the community or unlikely to comply with
> the order of removal, may be detained beyond the removal period
> and, if released, shall be subject to the terms of supervision in
> paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court of the United States considered whether § 1231(a)(6)

authorized the Attorney General to detain admitted criminal aliens indefinitely beyond the

removal period or only for a period reasonably necessary to secure the alien's removal.  The

Court held that "the statute . . . limits an alien's post-removal-period detention to a period

reasonably necessary to bring about that alien's removal from the United States [but] [i]t does not

permit indefinite detention." Id.  For the sake of uniform judicial administration, the Court

recognized six months as a presumptively reasonable period of detention under § 1231(a)(6).

Zadvydas, 533 U.S. at 701.

> After this 6-month period, once the alien provides good reason to
> believe that there is no significant likelihood of removal in the
> reasonably foreseeable future, the Government must respond with
> evidence sufficient to rebut that showing.  And for detention to
> remain reasonable, as the period of prior postremoval confinement
> grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of
> course, does not mean that every alien not removed must be
> released after six months.  To the contrary, an alien may be held in
> confinement until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

8

<u>Zadvydas</u>, 533 U.S. at 701.

The Supreme Court expressly rejected the government's argument that a federal habeas

court would have to accept the Government's view about whether the implicit statutory

limitation is satisfied in a particular case, without conducting independent review.  Recognizing a

habeas court's "legal responsibility to review the lawfulness of an alien's continued detention,"

<u>Zadvydas</u>, 533 U.S. at 700, the Court opined:

> . . . Whether a set of particular circumstances amounts to detention
> within, or beyond, a period reasonably necessary to secure removal
> is determinative of whether the detention is, or is not, pursuant to
> statutory authority.  The basic federal habeas corpus statute grants
> the federal courts authority to answer that question . . . .
>
>   In answering that basic question, the habeas court must ask
> whether the detention in question exceeds a period reasonably
> necessary to secure removal.  It should measure reasonableness
> primarily in terms of the statute's basic purpose, namely, assuring
> the alien's presence at the moment of removal.  Thus, if removal is
> not reasonably foreseeable, the court should hold continued
> detention unreasonable and no longer authorized by statute.  In that
> case, of course, the alien's release may and should be conditioned
> on any of the various forms of supervised release that are
> appropriate in the circumstances, and the alien may no doubt be
> returned to custody upon a violation of those conditions . . . .  And
> if removal is reasonably foreseeable, the habeas court should
> consider the risk of the alien's committing further crimes as a factor
> potentially justifying confinement within that reasonable removal
> period.

<u>Zadvydas</u>, 533 U.S. at 699-700 (citations omitted).

This year, the Supreme Court held that all aliens governed by 8 U.S.C. § 1231(a)(6) may

be detained only for the period reasonably necessary to bring about their removal.  <u>See</u> <u>Clark v.</u>

<u>Martinez</u>, 125 S.Ct. 716, 726 (2005).

> Both Martinez and Benitez were detained well beyond six months
> after their removal orders became final. The Government having
> brought forward nothing to indicate that a substantial likelihood of
> removal subsists despite the passage of six months (indeed, it
> concedes that it is no longer even involved in repatriation
> negotiations with Cuba); and the District Court in each case having
> determined that removal to Cuba is not reasonably foreseeable; the
> petitions for habeas corpus should have been granted.

Id. at 727.

In this case, the government does not contend that a substantial likelihood of Petitioner's

removal subsists despite the passage of 19 months since Petitioner was taken into custody. Nor

has the government brought forward evidence of a "significant likelihood of removal in the

reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Rather, the government argues that,

because Petitioner is preventing his removal, his detention is authorized by 8 U.S.C. §

1231(a)(1)(C), which provides that "[t]he removal period shall be extended beyond a period of

90 days and the alien may remain in detention during such extended period if the alien fails or

refuses to make timely application in good faith for travel or other documents necessary to the

alien's departure or conspires or acts to prevent the alien's removal subject to an order of

removal." 8 U.S.C. § 1231(a)(1)(C).

The Third Circuit has not construed or applied 8 U.S.C. § 1231(a)(1)(C) in a published

decision, although it cited the Ninth Circuit's decision in Pelich v. INS, 329 F.3d 1057 (9th Cir.

2003), with approval in an unpublished opinion. See Kovalev v. Ashcroft, 71 Fed. Appx. 919,

924 (3d Cir. 2003). In Pelich, the Ninth Circuit determined that 8 U.S.C. § 1231(a)(1)(C) is an

exception to Zadvydas. The Court affirmed the district court's order denying habeas relief

pursuant to § 1231(a)(1)(C) where Pelich refused to fill out a Polish passport application after the

10

Polish consulate sent a letter explicitly reserving its determination of Pelich's citizenship status pending review of the passport application. In addition, Pelich had provided DHS with conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality. Id. at 1059. Under these circumstances, the Ninth Circuit determined that Pelich "cannot legitimately object to his continued detention when that very detention is caused by his own conduct [and] Pelich could likely effectuate his own removal (and free himself from detention) by providing the Polish government with the requested information. It naturally follows that his detention is not destined to be indefinite." Id. at 1061. The Court cautioned, however, that, "[i]f Pelich fills out the application, it's denied and the INS *still* won't let him go, we would have a different case; we'd also have a different case if Pelich, in good faith, fills out the application to the best of his ability, yet the INS (without cause) claims it's not good enough." Id. n.3. See also Lema v. INS, 341 F.3d 853 (9th Cir. 2003).

    The government argues that a letter purportedly sent by Petitioner to Belize officials shows his failure to cooperate. (Letter dated March 13, 2005, Ex. G to Brief.) In the letter, Petitioner provides factual information regarding his family in order to verify his citizenship. The letter also informs Belize officials that Petitioner's wife, a United States citizen, has filed a petition to adjust his immigration status. The government seizes upon the following statement as proof of bad faith and non-cooperation: "I am not insisting that you not issue a travel document, but I would greatly appreciate it if I could be provided the opportunity to see [the application for adjustment of status] through." (Id.) This statement, to the extent that it was made, merely expresses Petitioner's preference not to be removed before the application for adjustment of status is decided. However, Petitioner's desire not to be removed is irrelevant to whether or not

he will be.  See Rajigah v. Conway, 268 F. Supp. 2d 159, 165-66 (E.D. N.Y. 2003) (alien's truthful statements to Guyanese ambassador regarding his intent to file court action challenging removal did not show failure to cooperate); Seretse-Khama v. Ashcroft, 215 F. Supp. 2d 37, 51-53 (D. D. C. 2002) (alien's truthful statements to Liberian officials that he did not wish to return did not prevent issuance of travel documents where petitioner lacked ties to Liberia).  As the Ninth Circuit observed in Pelich, "it's not his place, the INS's or the court's to determine whether Poland would admit him as a citizen.  For obvious reasons, the Polish government is in a better - some might say unique - position to make that determination."  Pelich, 329 F.3d at 1061.

After review of the documents submitted, the Court determines that in order to hear and determine this matter pursuant to 28 U.S.C. § 2243 an evidentiary hearing is required to determine whether the delay in deportation is caused by the failure of the Government of Belize to issue the necessary travel documents or by Petitioner's refusal to cooperate in properly applying for them and acting to prevent his removal.  If Petitioner, who admits to being a citizen of Belize, has fully cooperated to the best of his ability to obtain the necessary documents and Belize nonetheless refuses to accept him, he should prevail.  Whether the United States might thereafter assert treaty violation or seek sanctions, see 8 U.S.C. § 1253(d), is not within the purview of this Court.  However, for Petitioner to prevail, this Court would have to determine, based upon sufficient evidence, that a sovereign state has actually denied or unreasonably delayed acceptance of its citizen.

## III. CONCLUSION

For the reasons set forth above, the Court will direct that Petitioner be produced on

September 6, 2005, at 10:00 a.m. for an evidentiary hearing limited to the above issue.

GARRETT E. BROWN, JR., U.S.D.J.

DATED: _August 19_, 2005